CHARLES EARL STUBBS *v.* STATE OF INDIANA.

[No. 3-175A6. Filed August 19, 1976. Rehearing denied September 30, 1976. Transfer denied December 6, 1976.]

*James E. Burke,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *John D. Shuman,* Deputy Attorney General, for appellee.

HOFFMAN, J.—Defendant-appellant Charles Earl Stubbs was convicted by a jury of the crime of robbery while armed.[1] Stubbs was sentenced to the custody of the Department of Corrections for a determinate period of ten years. He subsequently filed a motion to correct errors, which was overruled by the trial court, and perfected this appeal.

The facts in the record before us, and reasonable inferences therefrom most favorable to appellee State, establish that shortly after 8:00 A.M. on January 26, 1974, appellant entered Ziker's Cleaners, Inc., a dry cleaning establishment in South Bend, Indiana. Appellant asked the clerk on duty, Harriet Kruszewski, if she had clothes for him and announced his name as "Willie Johnson." Kruszewski gave him a claim slip to fill out and went into a back room to look for appellant's clothing. While searching in the back room, Kruszewski heard the bell on the cash drawer ring. Because this bell rings when the drawer is opened, she proceeded to the front of the store where she found appellant behind the counter. After Kruszewski admonished appellant that customers were not allowed behind the counter, he produced a gun and aimed it at her.

---

1. IC 1971, 35-12-1-1 (Burns Code Ed.).

Appellant told Kruszewski to give him the money and she responded that the money was in the cash drawer. While appellant was attempting to open the cash drawer, Kruszewski tripped a silent alarm connected with the South Bend Police Department.

Appellant succeeded in opening the cash drawer and removed all of the paper currency therein, placing it in his right-hand coat pocket. He then pulled a telephone receiver from the wall, told Kruszewski to go into the other room, and started toward the front door. At this time, however, Officer Thomas DeRue arrived on the scene in response to the alarm. Officer DeRue testified that as he emerged from his patrol car with his service revolver drawn, he saw appellant with a gun in his hand. Upon spotting Officer DeRue, appellant threw the pistol which he held onto the floor.

Officer DeRue then entered the dry cleaning establishment and "frisked" appellant. He found $37 in currency in appellant's right-hand coat pocket, which was the exact amount of currency that was in the cash drawer before appellant perpetrated the robbery. Appellant was then advised of his rights by Officer DeRue and taken to the South Bend Police Station.

Appellant's first contention of error concerns a confession which he made to Detective Sergeant Charles Mahank and Detective Sergeant Irving Gershoffer on the day of the offense. Prior to trial, appellant made an oral motion for the suppression of such confession. At the hearing on such motion, testimony of Sergeant Mahank and Sergeant Gershoffer revealed that defendant was advised of his rights and signed a waiver statement before he was interrogated concerning the robbery of Ziker's Cleaners. Such evidence further revealed that after appellant's oral statement was typed, appellant read the statement to Officers Gershoffer, Mahank and Klebeck, and that the confession was not a product of coercion. The trial court subsequently found that the confession was given voluntarily after a full disclosure and waiver of appellant's constitutional

rights. The confession and waiver were admitted in evidence at trial, but were not displayed to the jury.

However, during trial Sergeant Mahank testified, on cross-examination, that the waiver was signed by appellant after he had implicated himself as to his guilt in the robbery. Appellant then orally moved to suppress any reference to the confession and the confession itself because of this testimony, and also moved for a mistrial. The trial court overruled both motions on the ground that the fact that the waiver was signed after appellant had been interrogated about the robbery did not mean that his rights were not read to him prior to such interrogation.

Sergeant Mahank testified, however, on further cross-examination, that appellant had orally implicated himself in the robbery prior to having his rights read to him. The trial court then retired the jury to the jury room and considered appellant's motions for an admonishment and a mistrial. After Sergeant Mahank again testified to the court that appellant was advised of his rights after he implicated himself in the robbery, the trial court sustained appellant's motion to suppress the confession. The trial court denied appellant's motion for a mistrial, however.

The jury was then returned to the courtroom and the trial court gave them the following admonishment:

> "The Court wishes to advise you that the Court has ruled that the so called waiver and a statement given by this defendant are to be suppressed and they will not be admitted into evidence and exhibits 1 and 2 are therefore withdrawn as exhibits in evidence and you are to disregard them in your determination of this cause, as if there were no statement given at any time or any waiver of rights signed at any time by the defendant in this cause."

On appeal, appellant asserts that the trial court erred when it failed to grant his pre-trial motion to suppress his confession, and that the trial court subsequently erred again when it failed to grant his motion for a mistrial after Sergeant

Mahank's testimony revealed that defendant had not been fully advised of his rights prior to confessing to this crime.

As to the first portion of appellant's contention, the evidence adduced at the hearing on appellant's motion to suppress the confession was sufficient to establish the voluntariness of appellant's confession under IC 1971, 35-5-5-1 (Burns Code Ed.). The trial court did not err in ruling such confession admissible upon the evidence then before it. Additionally, it should be noted that the grounds for defendant's pre-trial suppression motion involved an allegation that defendant was under the influence of drugs when the oral statement was made, not an allegation that defendant was unaware of his constitutional rights when giving the statement.

The second portion of appellant's contention concerns the denial of his motion for mistrial following the exclusionary ruling of the trial court. Even assuming, *arguendo*, that the admission of the appellant's confession was a Federal constitutional error, it must be borne in mind that the trial court overruled defendant's motion for a mistrial on the ground that such error could only have been harmless in view of the evidence which had been presented in this case. This court in *Moreno* v. *State* (1975), 166 Ind. App. 441, at 449, 336 N.E.2d 675, at 680-81, set out the Federal harmless error standard as follows:

"In discussing the federal harmless error standard, this Court in *Larimer* v. *State, supra* [(1975), 163 Ind. App. 673, 326 N.E.2d at 278-79] recently stated:

'Some harmless error guidance can be gleaned from *Chapman* v. *California, supra,* [1967], 386 U.S. at 24, 87 S.Ct. at 828:

". . . We, therefore, do no more than adhere to the meaning of our *Fahy* case [*Fahy* v. *State of Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171] when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test,

it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard, * * *"

* * * * * *

When applying the federal harmless error standard, we must weigh the evidence against Larimer [appellant]— absent his confession—and determine whether, beyond a reasonsable doubt, an honest and fair-minded jury would have rendered a guilty verdict based solely on the remaining untainted evidence.'

Subsequent to *Chapman, supra,* the United States Supreme Court has discussed the federal harmless error standard in terms of overwhelming evidence. *Brown* v. *United States* (1973), 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208; *Harrington* v. *California* (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. *See Moss* v. *State* (1975), [165] Ind. App. [502], 333 N.E.2d 141 [335 N.E.2d 633].[2] In *Harrington* v. *California, supra,* 395 U.S. at 254, 89 S.Ct. at 1728, 23 L.Ed. 2d at 288, Mr. Justice Douglas, writing for the majority, stated:

'. . . Our judgment must be based on our own reading of the record and *on what seems to us to have been the probable impact of the two confessions on the minds of an average jury.* . . .'

"In this case, we must consider both the probable probative impact of Moreno's confession on the jury as well as the amount and probative value of the other evidence in the record tending to sustain the finding of guilt."

The uncontradicted and unimpeached testimony of the State's chief witnesses, Harriet Kruszewski and Officer DeRue, established that the appellant was the individual who was apprehended immediately after having committed an armed robbery at Ziker's Cleaners in South Bend, Indiana, on the morning of January 26, 1974. The testimony of these two witnesses was presented during the State's case-in-chief, prior to any testimony concerning appellant's inculpatory statement. The evidence presented by appellant consisted solely of the testimony of Sergeant Mahank, offered to suggest that the revolver that defendant allegedly used in the robbery had a

2. As of the date of this opinion, *Moss* v. *Sttae* (1975), 165 Ind. App. 502, 333 N.E.2d 141, is pending before our Supreme Court on petition to transfer.

very loose cylinder and possibly was incapable of being fired. Thus, as stated by this court in *Moreno* v. *State, supra,* at 451 of 166 Ind. App., at 681 of 336 N.E.2d, "The allegedly tainted confession could have had no effect on the jury's reception of this evidence."

It is clear beyond a reasonable doubt that an honest and fair-minded jury would have rendered a guilty verdict solely on the above evidence absent the testimony concerning appellant's inculpatory statement. Therefore, even if such statement was erroneously admitted at trial, its admission was harmless error beyond a reasonable doubt. *Moreno* v. *State, supra.*

*See also, Dillard* v. *State* (1971), 257 Ind. 282, 274 N.E.2d 387.

Appellant's other contention is that the trial court erred when it failed to admonish the jury prior to their being excused for a recess at 11:49 A.M. on the day of trial, and that the trial court compounded this error when it later declared that the jury could discuss the case at any time the trial was in recess.

As to this issue, the record revealed the following:

"THE COURT:

It is the court's duty now to read to you the—

Let the record show that the jury was excused into the jury room at 11:49 for the purpose of the Court correcting a hiatus in the Court's instructions and now at 11:55 comes now defense counsel James Burke and, make your record.

"MR. BURKE:

I would like to make a motion on the mistrial on the basis that the jurors were excused without being admonished not to discuss the case among themselves or to form any opinion, that they are to keep an open mind and should not form or express an opinion at this time because they have not yet received the instructions as to

what the law is in this case and I have advised the Court approximately one half minute ago that this was my intention, that if you are to overrule this motion for a mistrial I would like them brought in and instructed now."

The trial court denied defendant's motion for a mistrial, had the jury returned to the courtroom, and gave them the following admonishment:

"THE COURT:

I did neglect to tell you when you were sent out roughly about five minutes ago, again to admonish you that you are not to form or express any opinions on this case until you hear the instructions of the Court. It will take about four or five minutes so while you are waiting desist from expressing any opinions to each other until you hear the final instructions. We will call you in a few moments."

Subsequent to such admonishment, defense counsel requested that the trial court poll the jury to determine if they discussed the case. The court responded to this request as follows:

"THE COURT:

Court will deny that request. There is no restriction that they may not discuss the case between them at any time that they are in recess. You may now retire to the juryroom. (Jury retires)."

Appellant asserts that he has preserved this assertion of error, notwithstanding the fact that the record does not show an immediate objection to the failure of the trial court to properly admonish the jury. Appellant contends that an immediate objection was impossible, since the trial judge left the courtroom abruptly, and without calling a recess.

However, the record does not reflect such fact, and appellant has not availed himself of the proper procedure to correct

the record. *See, Ray* v. *State* (1975), 165 Ind. App. 601, 333 N.E.2d 317, 320.

The record does reveal that approximately six minutes after the jury was excused into the jury room, appellant did object to the failure of the trial court to admonish the jury. The State contends, however, that this objection was not timely and that appellant has waived any error in the trial court's failure to so admonish the jury under the case of *Brown* v. *State* (1964), 245 Ind. 604, 201 N.E.2d 281.

In *Brown* our Supreme Court held that unless a timely objection was made, a defendant waived the right to object to irregularities affecting the jury, and at 608 of 245 Ind., at 283 of 201 N.E.2d, stated:

"The record shows that on this particular day during the trial, a recess had been called and the jury had started to leave the court room. Half of them were outside when appellant requested that the jury be instructed according to the terms of the statute, and asked the court to recall the jury for the purpose of such instruction. The Judge overruled the motion to which appellant takes exception. The record clearly shows that the objection and motion were made after the recess was called and the jury was half way out of the court room; therefore, such were not timely made. Failure to make timely objection generally waives the right to object to irregularities affecting the jury. (Citation omitted.)"

In *Brown* our Supreme Court further stated that even if the applicable statute is mandatory a defendant on appeal must still show how he was harmed by the failure of the trial court to instruct or admonish the jury as to its conduct during recess:

"Nowhere does appellant point out that he did not have a fair and impartial trial because of the failure on behalf of the court to instruct the jury according to the terms of the statute. *Therefore, even if this failure should be considered as error, it was not prejudicial since there was legal and competent evidence in the record from which the jury could have arrived at its verdict, and it is not made to appear that the technical error complained of may have in any way*

*prejudiced the rights of appellant. This court will disregard technical errors or defects which did not prejudice the substantial rights of a defendant."* (Emphasis added.) (*Ibid.* at 608-09 of 245 Ind., at 283 of 201 N.E.2d.)

In the present case, appellant has failed to properly preserve his alleged error, since the record does not indicate that a timely objection was made to the failure of the trial court to admonish the jury, nor does it establish that a timely objection was impossible. In addition, appellant has not shown this court how he was harmed by the failure of the trial court to admonish the jury. As stated hereinabove, the testimony of the two chief prosecution witnesses points overwhelmingly to appellant's guilt.

Similarly, although the trial court's statement in the presence of the jury suggesting that the jury could discuss the case amongst themselves at any time they were in recess was clearly in contradiction of IC 1971, 35-1-37-2 (Burns Code Ed.), such error in this case could have been harmless. First, as noted hereinabove, the State's case was based on testimony of two eyewitnesses to the crime whose testimony was unimpeached and uncontroverted. Second, the record reveals that defense counsel failed to object to the trial judge's misstatement of such statutory rule at the time it was made. Third, the record discloses that the trial judge properly instructed the jury pursuant to IC 1971, 35-1-37-2, *supra*, in its preliminary Instruction No. 1 and, again, at the end of the first day of trial. The appellant has not demonstrated reversible error. *Brown v. State, supra* (1964), 245 Ind. 604, 201 N.E.2d 281.

The judgment of the trial court must be affirmed.

Judgment affirmed.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 352 N.E.2d 812.